# United States District Court

**EASTERN DISTRICT OF TEXAS**

**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:10-CR-13 |
| | § | Judge Folsom |
| WILLIAM J. KLEINKAUF | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence and Statements (Dkt. #26). Having considered the relevant pleadings, and argument and testimony given at the June 10, 2010 hearing, the Court is of the opinion that Defendant's motion should be denied.

## BACKGROUND

Defendant is charged with two counts of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Defendant is also charged with Attempted Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Defendant seeks to suppress all evidence seized from Defendant's office, including his computer and its contents, and any statements made by Defendant.

### *Special Agent James Pokorney*

The Government offered the testimony of Special Agent James Pokorney ("Pokorney") of the Department of Homeland Security Immigration and Customs Enforcement ("ICE").[1] Pokorney was the initial case agent in the investigation of Defendant. Pokorney drafted the affidavit used to obtain a warrant for the search of Defendant's office. From May of 2003 to July of 2009, Pokorney

---

[1] The Court only considers the information contained in the affidavit in considering the sufficiency of the affidavit in establishing probable cause. However, testimony on information not included in the affidavit is relevant to the affiant's good faith and knowledge at the time the affidavit was prepared.

participated in over 100 investigations of child exploitation. He received special training from ICE's Cyber Crimes Center ("CCC") regarding child exploitation cases as part of the Cyber Crimes Unit ("CCU"). He has obtained numerous search warrant affidavits as an affiant, some of which were "website cases."

Through his work with the CCU he was involved with cases where individuals purchased access to member-restricted child pornography websites. In his experience, a person believed to have purchased access to a child pornography website has always actually saved and downloaded child pornography. In his experience, people who purchase memberships to child pornography websites save and secure their child pornography collections. In his experience, such persons write down and save passwords to child pornography websites. Also, such persons generally save images of child pornography for long periods of time and do not typically destroy the images. It is difficult for collectors of child pornography to destroy their collection and not download other images to "re-establish that connection." In many cases, people believe they have permanently deleted files from their computer when they have not.

In April of 2006, "the [CCC] initiated an investigation into a criminal organization that owned and operated numerous child pornography websites over the internet." During the course of the investigation the CCC completed approximately 60 undercover purchases and identified approximately 23 child pornography websites. The undercover investigation identified Paypal accounts that the criminal organization used to facilitate the payment for access to child pornography websites. They also identified specific advertising websites that the organization used to solicit customers. One of the 23 identified websites was "Hardlovers or HL Package," which is also identified by the number "1012."

On May 21, 2007, Pokorney's office received a list of subscribers to the 23 identified websites that were located in their area of responsibility. The subscribers list was accompanied by an 80-gig hard drive that contained information from the approximately 60 undercover purchases made by the CCC. It included the advertising web pages and the actual content that was purchased from the child pornography websites. It included payment information for access to the websites.

Although the hard drive did not include all of the content for the Hardlovers website, it did include 1,980 images from the site as part of a partial capture by the undercover agents. Pokorney viewed the 1,980 images, and all of the images depicted child pornography. All of the images were submitted to the National Center for Missing and Exploited Children ("NCMEC"). NCMEC "is a tool for law enforcement" and is relied upon by law enforcement organizations. Images believed to be child pornography are submitted to NCMEC to determine if the images depict any known victims and to establish that the images are of actual minors. Of the 1,980 images submitted to NCMEC, 570 were of known victims that were identified in previous child pornography investigations. This means the victims were identified by their name and date of birth to be minors.

A partial capture was made of the Hardlovers website by an undercover agent. An all-inclusive capture of the website was not possible due to the manner in which the server hosting the website was set up. The undercover agent did not see anything on the website that was not child pornography. Hardlovers had at least 1,980 images of child pornography available at that time.

ICE was able to identify that Defendant's internet browser was on the website "yourbillingcenter.com" immediately before he was directed to PayPal to purchase a membership to the Hardlovers website. NCMEC provided a report indicating that yourbillingcenter.com, among many other websites and URLs, contained child pornography content. Pokorney had no doubt that

the report was accurate, but had a question as to why yourbillingcenter.com was listed with asterisks. Through his contacts at NCMEC he was told that the report was accurate and the asterisks meant that NCMEC had generated a prior report related to the website. The name of the website is not necessarily indicative of what is on the site. Sometimes child pornography websites use names that would not indicate they contain child pornography, in order to hide the true content of the site.

Based on NCMEC's report, and his follow-up with NCMEC, he represented in his affidavit to United States Magistrate Judge Don D. Bush that yourbillingcenter.com contained child pornography. Pokorney had no reason to doubt the truth or veracity of this statement. Some time much later, a question was presented by Defendant about that paragraph of the affidavit. ICE Special Agent Bradley Hudson ("Hudson") conducted an investigation and found that YourBillingCenter.com did not contain child pornography. To Pokorney's knowledge, NCMEC has not subsequently changed its report. At the time he drafted his affidavit and presented it to Judge Bush, Pokorney believed that yourbillingcenter.com contained child pornography and was the website Defendant was viewing immediately before he made his purchase through PayPal of a membership to Hardlovers. Pokorney stated that he in no way intended to mislead Judge Bush. He based this belief on NCMEC being reliable in the past and being utilized by law enforcement. Also, he personally viewed 1,980 images captured from Hardlovers that depicted child pornography. Further, the 80-gig hard drive sent to him by CCC contained advertisements associated with the Hardlovers site, and every advertisement website for Hardlovers contained child pornography images. Advertising websites identify what a person is looking for as far as content because they provide sample images of "what they're paying for."

On October 31, 2006, Defendant purchased access to the Hardlovers website. No undercover

purchases were made that day. ICE did conduct undercover purchases on October 27, 2006, and November 1, 2006. Both purchases were for $94.95 each. Both of these undercover purchases of memberships to Hardlovers were made from websites containing sample images of child pornography available at Hardlovers. Because undercover buys made just days before and after Defendant's purchase were from advertisement websites that contained child pornography, Pokorney felt it was reasonable to believe the report from NCMEC stating that yourbillingcenter.com contained child pornography.

PayPal records obtained by the CCC reflected that Defendant purchased access to the Hardlovers or HL Package website on October 31, 2006. The records showed Defendant paid $94.95. The records provided an IP address, the time, phone number, e-mail address, and physical address related to the purchase. The e-mail address provided was Kleinkauf4Law@yahoo.com. The physical address provided was 3535 Firewheel Drive, Suite A, Flower Mound, Texas. The records also provided a credit card number used for the membership purchase. Pokorney checked for additional purchases by Defendant, but did not see any.

Pokorney stated that "Hardlovers is a hard-core commercial child pornography website that contained hundreds of images of children engaged with other children and adults in explicit conduct." The site contains various directories and subdirectories. The subdirectories contain galleries of child pornography images. Two of the subdirectories contained galleries titled "Sabban" and "Vicky," which are separate known victims series identified previously by law enforcement and NCMEC.

Pokorney conducted his own investigation. He identified Defendant by name, date of birth, and social security number and found his home address. He issued a U.S. Customs Summons for

information on Defendant, ran computer checks, and conducted surveillance to corroborate the information obtained from the PayPal records. He observed Defendant outside the 3535 Firewheel address. He also investigated the IP address from which the purchase was accomplished, located the service provider for that address, and contacted them to determine to whom the IP address was registered on October 31, 2006. The internet service provider stated that the IP address was registered to Oliver, Hobiera, and Ibison ("OHI"). He obtained a copy of Defendant's driver's license. He queried the Texas Bar Association, which stated that Defendant's business location was 3535 Firewheel Drive. He matched the telephone number from the PayPal records to Defendant. Logs obtained from Yahoo showed that Defendant was the current subscriber for the e-mail account Kleinkauf4Law@yahoo.com, that Defendant was the subscriber at the time of the membership purchase, and that the IP address used to access the e-mail account matched the one identified in the PayPal records.

A search warrant for Defendant's office, located at 3535 Firewheel Drive, was executed on August 9, 2007. Agents entered the OHI office and encountered the owners. Pokorney and Hudson entered shortly thereafter and encountered Defendant in the hallway near his office. They informed Defendant that he was not under arrest and that he was free to leave. Defendant agreed to speak with them in his office while the search was conducted by other agents. Pokorney told Defendant at least twice that he was free to leave. Defendant is an attorney, licensed to practice law in Texas since 1985. Defendant was very cooperative and provided his identification and credit cards when asked. A few minutes into the conversation, Pokorney told Defendant that they were there because a membership to a member-restricted child pornography website occurred from the OHI office in October of 2006. Defendant told the agents, "I figured that's why you were here." Defendant went

on to state, "I did it, I'm ruined." Defendant was very forthcoming. Defendant told them that he was ashamed of himself and "needed to fess up." Defendant stated that he knew what he was saying was voluntary and incriminating.

Defendant admitted that he made the membership purchase from the OHI suite in 2006. Defendant stated that at the time of the purchase, he knew that it was for child pornography and that there was no mistake. Defendant stated that he had been looking at child pornography over the last several years from Suite A and Suite C of the OHI premises once or twice a week over the internet from free child pornography websites. He told the agents that he joined Hardlovers "out of sick curiousity" and "knew what was there."

According to Defendant, he tried to cancel the subscription one or two days later. However, after obtaining Defendant's credit card records under the search warrant, Pokorney could not find any cancellation in Defendant's credit card records. Pokorney did identify the purchase in the credit card records. A subsequent forensic search of Defendant's computers showed two e-mails from Defendant to the criminal organization that ran the website. The first stated that Defendant was having trouble accessing the website. The second e-mail stated that Defendant wished to cancel the subscription. Pokorney testified that it would be possible for Defendant to purchase access to other child pornography websites, or renew his subscription to Hardlovers, without using PayPal.

Defendant told the agents which search terms he used to search for child pornography. He told them that he wrote the terms down on a piece of paper located in his desk drawer. Agents conducting the search found the list.

Defendant stated that in late 2006 or early 2007 his computer hard drive crashed and he gave the computer to Mike Oliver ("Oliver"), OHI's information technology employee.

During the conversation with Defendant, Defendant's wife called on the phone, stating that agents were at Defendant's home to conduct a search. Defendant told his wife to allow the search.

At no time was Defendant handcuffed, were guns drawn, or was any force shown by agents while conducting the search or questioning Defendant.

Defendant's office computer was seized. Oliver voluntarily gave agents the hard drive that he obtained from Defendant's old computer. Both of the computers seized contained child pornography.

### *Special Agent Patrick McGaha*

The Government offered the testimony of ICE Forensic Agent Patrick McGaha ("McGaha"). McGaha was one of the computer forensic examiners assigned to the investigation of Defendant. Specifically, he was assigned as "the privilege or the taint computer forensics agent." Because Defendant was an attorney, there was a concern attorney-client privileged information might be located on Defendant's computer or digital media. McGaha worked in conjunction with assistant United States Attorney Traci Kenner to sort out any privileged information seized from Defendant prior to agents conducting the criminal investigation seeing the seized items and information.

McGaha was present during the August 9, 2007 search of Defendant's office. He spoke with Oliver, OHI's information technology local area network administrator. McGaha was tasked with finding out to whom the IP address associated with the warrant was actually assigned. Oliver took two agents to the LAN room to identify the IP address. Oliver indicated that Defendant gave him an old computer that was no longer working. Oliver had the computer at his home because he normally refurbished broken OHI computers and donated them to charity. Oliver inquired if agents might want that computer too. McGaha said they were interested, and two agents, with a consent

to search, went with Oliver to his home to retrieve the computer.

Oliver indicated that in the past he noticed a real slowdown of the OHI internet and tried to locate the problem. The lag was coming from Defendant's "side of the internet." Oliver discovered that a huge number of files were being downloaded that were indicative of pornography.

McGaha spoke briefly with Defendant during the search. Defendant appeared relaxed and jovial.

After the execution of the warrant, over a period of approximately four weeks, Defendant contacted McGaha several times. Defendant was concerned about what ICE might find on his computer. He told Defendant that he was not searching for evidence, but was sorting out privileged information. Defendant stated that he had been running a "wiping or erasing program" on his computer and that the sellers of the program indicated that if it had been used correctly, nothing would be left on the computer. Defendant stated that he was concerned agents would find images of child pornography. Defendant said that if agents found anything on his computer, his life and career would be over. Defendant confirmed that he gave Oliver the computer that Oliver turned over to the agents.

McGaha and other agents nationally are seeing a move from the traditional collector of child pornography who would have millions of saved images in either hard copy or part of their hard drive. There is a movement now among collectors to buy access, look at the child pornography, and then delete it from their hard drive. In his experience, sophisticated users sometimes utilize software designed to eliminate images of child pornography from their computers. However, due to a lack of sophistication by the user, images are often not actually deleted.

## ANALYSIS

Defendant makes the following arguments regarding the affidavit used to obtain the search warrant in this case: (1) An inference that Defendant downloaded and retained images of child pornography cannot be based upon fact the that Defendant purchased access to a website not shown to contain only or predominantly child pornography; (2) An inference that Defendant downloaded and retained images of child pornography cannot be made when there is no evidence that Defendant actually downloaded or viewed any illegal images on the website; (3) The search warrant is fatally deficient because the affidavit does not describe the complete content of the website; (4) Inclusion in the affidavit that Defendant was viewing a web page containing child pornography immediately prior to subscribing to the website renders the warrant fatally deficient; (5) Boilerplate language contained in the affidavit cannot support probable cause related to Defendant; (6) Information in the affidavit that Defendant purchased a membership to the website in October of 2006 is stale and cannot support a finding of probable cause in August of 2007; (7) Any statements made by Defendant are fruits of the illegal search.

When considering the validity of a search warrant, the Court engages in a two-step inquiry: (1) the Court must determine whether the good-faith exception to the exclusionary rule applies; and (2) then the Court must determine whether the warrant was supported by probable cause. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2006); *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993); *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). The Court need not reach the question of probable cause if the good-faith exception applies, and the case does not involve a "novel question of law." *Payne*, 341 F.3d at 399; *Laury*, 985 F.2d at 1311; *Satterwhite*, 980 F.2d at 320. Since this case does not appear to present a novel question of law, the Court should

initially address the good-faith issue.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court concluded "that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Satterwhite*, 980 F.2d at 320 (citing *Leon*, 468 U.S. at 922-23, 104 S.Ct. at 3420). The good-faith exception does not apply under any one of four situations: (1) the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not have reasonably relied on its validity. *United States v. Cherna*, 184 F.3d 403, 407-08 (5th Cir. 1999). However, "[w]hen a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Id*. at 321 (citations omitted). A "bare-bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id*. (citations omitted). Defendant makes arguments that the good-faith exception should not apply based on the first and third situations described above.[2]

***Misrepresentations and Omissions***

First, Defendant argues that the good-faith exception does not apply because Pokorney, the

_____

[2] Defendant couches several of his arguments as applying to the first exception. However, several of the arguments appear to also implicate the third as well.

affiant, knowingly or with a reckless disregard for the truth, misled Judge Bush. Defendant's argument focuses on the statement in the affidavit regarding the website "yourbillingcenter.com." The affidavit describes "yourbillingcenter.com" as "a referring URL" from "the PayPal transactional logs for [Defendant]."[3] The affidavit also states that "[t]he referring URL indicates the website the customer was viewing immediately prior to connecting to a PayPal payment page" and that "[NCMEC] verified that the URL listed in this paragraph contained child exploitation images." Pokorney admits that the referring website does not contain child pornography. However, he maintains that at the time he sought the warrant, he believed that the website did contain child pornography, and he did not intend to mislead Judge Bush in any way.

The Court agrees with the Government that there is no evidence in the record that Pokorney knowingly or with a reckless disregard for the truth made a false statement in his affidavit to Judge Bush or attempted to mislead Judge Bush. Pokorney testified that he relied upon a report from NCMEC when he stated in the affidavit that the referring URL "yourbillingcenter.com" contained child pornography. NCMEC was considered reliable, and various law enforcement agencies rely upon NCMEC for information. Pokorney inquired with NCMEC as to the asterisks next to the website name and was informed that the asterisks indicated a prior report on "yourbillingcenter.com" was generated by NCMEC. NCMEC confirmed that the report Pokorney was using to support his affidavit was correct. Further, Pokorney indicated the advertising websites for Hardlovers contained child pornography, which led him to believe that "yourbillingcenter.com" would also contain child pornography. Defendant has simply not shown that Pokorney knowingly or recklessly made a false statement to Judge Bush.

---

[3] See Paragraph 23 of the Affidavit.

Defendant argues that Pokorney committed an "intentional act or omission" by providing "a very limited description of the contents of the 'Hardlovers' website in the affidavit." According to Defendant, this prevented Judge Bush from making a proper probable cause determination "with regard to the primary, or predominate, purpose of the site, as the cases cited require." The Court disagrees. The affidavit does not state that the Hardlovers site contained only child pornography. However, Pokorney stated at the hearing, and the affidavit states, that a partial capture of the website found that the site contained galleries entitled "Baby" and "Girls." Galleries entitled "Sabban" and "Vicky," which NCMEC confirmed as known victims, were found by the partial capture. 1,980 images believed to be child pornography were included in the partial capture and NCMEC identified 570 of these images as depicting victims previously identified by law enforcement. Pokorney testified that the website was built in a manner that did not allow a complete capture. Further, Pokorney testified that the only images found by undercover agents on the Hardlovers site were child pornography. The Court cannot conclude that any attempt to knowingly or recklessly mislead Judge Bush occurred or was intended to occur.

Further, the Court disagrees with Defendant that Judge Bush could not make "a probable cause determination with regard to the primary, predominate, purpose of the site." While there is no statement in the affidavit that the website only contained child pornography, an inference by the Magistrate Judge that the predominant purpose of the website was the collection and distribution of child pornography is not unreasonable based on the facts listed above. Defendant's argument that the affidavit "would surely have stated otherwise had the site been devoted primarily to child

pornography" is unavailing.[4]  The affidavit plainly states that Defendant purchased a subscription "to a child exploitation member-restricted website" owned and operated by a criminal organization responsible for 23 child pornography websites, and Defendant's subscription gave him access to at least 1,980 images of child pornography, 570 of which NCMEC has identified as depicting known victims.

Also, the Court does not agree with Defendant that it was necessary for the predominant purpose of the site to be to collect and distribute child pornography.  The Fifth Circuit has stated that probable cause exists when the defendant knowingly and voluntarily joins a group that has the predominant purpose to engage in the collection and distribution of child pornography.  *United States v. Froman*, 355 F.3d 882, 891 (5th Cir. 2004).  The Fifth Circuit did not hold, as Defendant argues, that there is a requirement that the website's predominant purpose be the distribution of contraband in order to support probable cause.  Showing the predominant purpose of the website to be child pornography is only a factor supporting probable cause; it is not a requirement for probable cause.  Defendant's argument that the affiant somehow attempted to mislead Judge Bush by not describing all of the contents of the website is not supported by the record.  In fact, Pokorney testified that neither he nor any of the undercover agents ever saw content from the Hardlovers site that would not be considered child pornography.

The Court also disagrees with Defendant that the affiant knowingly or recklessly misled Judge Bush because "the affiant did not inform the magistrate that the [D]efendant personally

---

[4] The Ninth Circuit has found an affidavit to be sufficient to establish probable cause where the affidavit states that the member-restricted website contains child pornography as well as legal pornography.  *See United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (finding probable cause where affidavit stated website contained "adult pornography, child pornography, and child erotica").

accessed the subdirectory described in the affidavit, that the [D]efendant personally observed any contraband images contained within this subdirectory, or that [D]efendant downloaded any contraband material." Defendant argues that without such information, Judge Bush "could not make a lawful probable cause determination that contraband would be found." The Fifth Circuit has stated that "[t]his court does not require that an affidavit supporting a warrant to search for child pornography contain specific, individualized information that a defendant possesses child pornography." *United States v. Flanders*, 468 F.3d 269, 271 n. 3 (5th Cir, 2006). However, "a reasonable inference can be drawn that a person who [purchases a membership to] a child pornography website will take advantage of the contents." *United States v. Silva*, No. SA-09-CR-203, 2009 WL 1606453, *8 (W.D. Tex. June 8, 2009). The affidavit states that ICE had evidence that Defendant purchased a membership to Hardlovers and nothing more. There is no evidence whatsoever that Pokorney attempted to mislead Judge Bush as to whether or not ICE had independent information that Defendant accessed the website, certain subdirectories, or viewed the images. However, such an inference by Judge Bush would be appropriate.

Defendant also argues that the affiant attempted to mislead Judge Bush by not stating in the affidavit that Defendant did not renew his subscription to the Hardlovers website.[5] Pokorney testified and stated in his affidavit that Defendant paid $94.95 for a thirty-day subscription to Hardlovers, on October 31, 2006, via PayPal. Pokorney testified that he did not know if Defendant

---

[5] In *United States v. Froman*, 355 F.3d 882, 890 (5th Cir. 2004), the Fifth Circuit considered evidence that a defendant never attempted to cancel his month-long membership to a child pornography website to support probable cause for a search warrant. Here, at the time Pokorney drafted his affidavit, there was no evidence that Defendant ever attempted to cancel his subscription. Credit card statements obtained after the warrant was served also did not show that Defendant cancelled his subscription. After a forensic examination of Defendant's computer, an email was found that reflected Defendant's wish to cancel his membership and another email stating that Defendant was having difficulty accessing the website. Pokorney had no information at the time the search warrant was obtained that any attempt was made by Defendant to cancel his subscription.

renewed his subscription or not. He stated that there was no evidence of a renewal according to the PayPal records, but that a renewal could have been made through other payment means. The Court finds that Pokorney did not knowingly or recklessly disregard the truth in not stating if Defendant renewed his subscription or not. He stated in his affidavit that Defendant purchased a thirty-day subscription to Hardlovers, and nothing more. Pokorney did not state or insinuate in the affidavit that the subscription was renewed. No misrepresentation occurred.

An overarching theme of Defendant's arguments regarding alleged misleading of Judge Bush is what Defendant feels should have been included in the affidavit. The standard for finding probable cause is "a fair probability" that evidence of a crime would be found on Defendant's computer, not that there is a near certainty or guarantee that child pornography would be found. The issue before Judge Bush in deciding whether to authorize a search warrant is not what was not in the affidavit, but whether what was in the affidavit is sufficient. "The good faith exception does not apply when an affiant omits information...that would have *weakened* the case against the [D]efendant." *United States v. Dodd*, 349 F. Supp. 2d 1039, 1050 (W.D. Tex. 2004) (citing *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000)). "Any omission must be of information that is not only relevant, but dispositive, so that if the omitted facts had been included in the affidavit, there would not be probable cause." *Id*.

Here, the omissions alleged by Defendant would have strengthened the case against Defendant. For example, there was evidence that the predominant purpose of the website was child pornography and that the undercover agents only saw child pornography, and not legal pornography, on the website. Such information could have been included in the affidavit. Defendant argues that Pokorney should have stated that there was no evidence of a renewal of Defendant's subscription.

While Pokorney testified that at the time the search warrant was obtained there was no evidence of renewal according to the PayPal records, he also testified that there was no evidence that Defendant's subscription was ever cancelled and that Defendant could have used a different method of payment for a renewal. A statement in the affidavit that there was no evidence that the subscription was cancelled would have supported probable cause. Based on the foregoing, Defendant has failed to carry his burden. The Court concludes that any information included in the affidavit that proved to be false or incorrect was not the result of an intentional misstatement or reckless disregard for the truth on the part of the affiant.

***Probable Cause***

The Court now turns to the third exception to the good-faith exception and addresses whether the affidavit in this case was so lacking in indicia of probable cause as to render belief in its existence unreasonable.[6] The affidavit here is not a bare-bones affidavit and raises a fair probability that images of child pornography would be found in Defendant's possession. This fair probability exists whether or not the paragraph of the affidavit discussing Defendant's access to "yourbillingcenter.com" is included in the affidavit.

Defendant argues that probable cause does not exist because the affidavit does not state that Defendant actually accessed or downloaded images depicting child pornography. As previously discussed, there is no such requirement. Similarly, Defendant argues that the affidavit does not establish probable cause because it does not include a complete description of the website's content. As discussed above, such a description is not required. Defendant seeks to require the affidavit here

---

[6] Many of Defendant's arguments regarding the first situation in which the good-faith exception would not apply also implicate the third situation.

to establish a level of probable cause that equates to an absolute certainty that Defendant committed illegal activity. All that is required is that the affidavit provide enough information to show a probability of criminal activity. *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993). The test for determination of probable cause is whether the Magistrate Judge had a reasonable basis for concluding that a search warrant would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. at 236.

Defendant objects to the inclusion in the affidavit of what he states are "boilerplate" assertions and "sample" search warrant affidavits. The Court is of the opinion that a description of the investigation conducted by ICE is highly relevant to a probable cause determination in this case. Defendant is not particularly specific as to which parts of the affidavit he considers boilerplate, but does take issue with assertions regarding "the detailed proclivities of child pornography collectors." Defendant appears to argue that because Defendant told McGaha that he tried to remove child pornography images from his computer, he could not be considered a collector of child pornography because the affidavit states that collectors of child pornography keep the images for long periods of time. First, the affidavit was based upon Pokorney's own experience that individuals that purchase subscriptions to member-restricted child pornography websites collect and save the images for a long period of time. Whether the same or similar language is included in other search warrant affidavits makes it no less relevant, as it is based upon Pokorney's own experience investigating similar cases.

Further, the affidavit states "the following characteristics are generally found in varying combinations in people who produce, trade, distribute, or possess" child pornography and "rarely, if ever, dispose" of the child pornography images. The fact that Defendant attempted to erase the images from his computer does nothing to "undermine" the assertions in the affidavit that images

18

of child pornography would be found on Defendant's computer. Pokorney and McGaha testified that Defendant was unsuccessful in deleting or erasing the images from his computer. As Pokorney states in the affidavit, "computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the internet." The fact that Defendant attempted to erase the images makes it no less likely that a forensic search of his computer would uncover the images. Further, the affidavit does not state that a collector of child pornography will never delete the images. The affidavit describes "characteristics [that] are generally found" in collectors of child pornography. Therefore, Defendant's argument that these sections of the affidavit should not be considered in determining probable cause are unavailing.

The affidavit here is not a bare bones affidavit, even if the Court ignores information that proved to be incorrect. The affidavit here sets out specific facts regarding Defendant. On October 31, 2006, Defendant made a purchase through PayPal of $94.95 for a 30-day subscription to "HL Package," also known as Hardlovers. The email address linked to the PayPal account was associated with a criminal organization that operated 23 child pornography websites, confirmed by over 60 undercover transactions. The PayPal records showed Defendant's name, email address, physical address, IP address, and phone number, which affiant corroborated. The affidavit describes Hardlovers as "a child exploitation member-restricted website" and states that Defendant "purchased a subscription to a member-restricted website that distributed child pornography."

The affidavit further set out that Hardlovers contained at least 1,980 suspected images of child pornography, 570 of which were confirmed by NCMEC to be child pornography depicting known victims. The affidavit also provides three "known victim image descriptions" as a sample of the content of Hardlovers to establish that the website contains child pornography. The affidavit

clearly states that "[s]everal of the images depicted lascivious displays of the female minors' genitalia" and that the "female minors were displayed in sexually suggestive manners." Some of the galleries or subdirectories were entitled "Baby" or "Girls," which by their titles alone suggest child pornography.

The affidavit also provides information based upon Pokorney's training and experience with cases involving child pornography. For example, Pokorney states that the majority of child pornography collectors rarely erase or dispose of images of child pornography, making it more likely that such images are retained for long time periods. The affidavit also states that due to the nature of electronic data storage on a computer hard drive, it is often difficult to fully delete evidence of images of child pornography, making it more likely that such images are retained on Defendant's hard drive. Based upon his training and experience in investigating child pornography collecting, combined with the details related to Defendant's purchase of a subscription to Hardlovers, Pokorney stated that there was probable cause to believe that Defendant knowingly received or possessed child pornography.

Defendant argues that the information above, in Pokorney's affidavit, was "stale" and could not be relied upon to establish probable cause. Defendant bases this argument on the fact that the affidavit states that Defendant subscribed to the Hardlovers website on October 31, 2006, and the search warrant was sought August 7, 2007, approximately nine months later. Defendant argues that there is no evidence that Defendant actually accessed the website, that Defendant subscribed only one time, and that the affidavit does not state Defendant renewed his subscription. Further, Defendant again argues that "boilerplate language" stating that collectors of child pornography rarely dispose of explicit material has not been shown to apply to Defendant.

The Court has already discussed at length that the language Defendant considers to be boilerplate and not applicable to Defendant specifically is proper background evidence to be considered by the Magistrate Judge. Also, Defendant's argument that the affidavit does not establish that he actually accessed the website is incorrect. The affidavit established that Defendant purchased a subscription to the Hardlovers website that contained over 1,980 suspected images of child pornography. While the affidavit does not state that the website contained only child pornography, it does not state that legal pornography was also on the site. *See United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (finding probable cause where affidavit stated website contained "adult pornography, child pornography, and child erotica"). In fact, the affidavit is clear that Hardlovers was a child-exploitation website, owned and operated by a criminal organization that was running 23 child pornography websites. It is perfectly reasonable for Judge Bush to believe that Defendant would download child pornography from the website after providing very specific personal information and nearly one hundred dollars for a subscription. *See United States v. Diaz*, 529 F.Supp.2d 792, 799-800 (S.D. Tex. 2007) (citing *Gourde*, 440 F.3d at 1070-71) ("It is common sense that someone who paid for access to a website that purveyed child pornography probably had viewed or downloaded such images onto his computer.").

The Court also disagrees with Defendant's argument that the information in the affidavit was stale due to the approximately nine months between Defendant's access to the website and the issuance of the search warrant. In the child pornography context, the Fifth Circuit has not established a bright-line rule in regard to staleness of information contained in an affidavit. Courts considering the time period between the alleged purchase of a membership to a child pornography website and the date a warrant was sought have not considered the information in the affidavit stale

in time frames similar to or exceeding the time period of approximately nine months seen here. *See, e.g., United States v. Silva*, No. SA-09-CR-203, 2009 WL 1606453 (W.D. Tex. June 8, 2009) (approx. 17 months); *United States v. Costello*, 596 F. Supp.2d 1060 (E.D. Mich. 2009) (approx. 13 months); *United States v. Bogle*, No. 08-335, 2009 WL 1064473 (W.D. Pa. April 20, 2009) (approx. 10 months); *United States v. Winkler*, No. SA-07-CR-253, 2008 WL 859197 (W.D. Tex. March 28, 2008) (approx. 11 months).

The Fifth Circuit has held in the child pornography context that "computer files are of a type that could be expected to be kept for long periods of time in the place to be searched." *United States v. Streetman*, 207 Fed. App'x 414, 416 (5th Cir. 2006) (citing *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000)). As discussed above, Pokorney's affidavit contained similar information, explaining that collectors of child pornography rarely delete the illegal images from their computer, and in many cases the images still appear on the computer hard drive even after attempts to erase them. A computer file depicting child pornography is the type of information that is "less likely to be stale" because it "could reasonably be expected to be kept in a particular location for long periods of time." *Silva*, 2009 WL 1606453 at *7.

Further, "an investigation of child pornography involves a multitude of websites, companies, and individuals whose common goal is to elude detection." *Id*. at *7 (citing *Winkler*, 2008 WL 859197 at *20). "It would frustrate the Fourth Amendment's protection...to force those tasked with investigating child pornography to hastily charge an individual based upon incomplete and uncorroborated information because of fear that a more complete investigation would consume too much time, rendering some information stale and unable to support a search warrant." *Id*. Here, the investigation of Defendant was part of a nationwide investigation of child pornography that cannot

be expected to be completed shortly after Defendant purchased a membership to Hardlovers. Also, ICE agents needed time to corroborate the information connected to Defendant provided by PayPal. Therefore, the Court finds that the information included in Pokorney's affidavit is not stale.

The Court concludes that the affidavit supplied sufficient indicia of probable cause. The affidavit states that Defendant voluntarily purchased a one-month membership to a member-restricted child pornography website that was owned and operated by an organization that owned and operated other child pornography websites. The membership was purchased approximately nine months before the search warrant was executed. The affidavit presents information connecting the purchase of the membership to Defendant, including his e-mail address, IP address, phone number, and credit card information. The affidavit presents information that, in the experience of the affiant and other law enforcement officers, images of child pornography are likely to still be located on Defendant's computer, due to the nature of storage of such images on a computer hard drive and the proclivities of collectors of child pornography. Probable cause existed even without relying upon information that the website Defendant was viewing immediately prior to his membership purchase contained child pornography, although there was no evidence at the time that this information was not correct. Based upon the foregoing, the Court concludes that the affidavit presented to Judge Bush did provide sufficient indicia of probable cause. Defendant has failed to carry his burden on this issue.

## CONCLUSION

The Court finds that even if the affidavit did not establish probable cause, the officers executing the warrant were entitled to rely in good faith upon the Magistrate Judge's probable cause determination. *See Leon*, 468 U.S. at 927-28. The affidavit provided sufficient indicia of probable

cause to believe that there was a reasonable probability that Defendant had accessed and received child pornography. Nothing was presented to the Court to indicate that any of the information contained in the affidavit was deliberately false or misleading. Defendant has not shown bad faith by any of the agents or officers involved with this case.[7] Therefore, the good-faith exception to the exclusionary rule applies and the Court recommends that Defendant's motion be denied.[8]

---

[7] Defendant, in his supplemental briefing, questions "NCMEC's good faith" in supplying the affiant with information that proved to be incorrect. The Court declines to address this issue as it first appears in the supplemental post-hearing briefing. Further, the affiant's good faith is at issue, not NCMEC's, and the affiant testified that NCMEC was considered reliable by various law-enforcement officers and organizations.

[8] Because the good-faith exception applies, the Court declines to address the Government's argument that even if the search warrant was illegal, Defendant's statements are not suppressed because the statements were "purged of the original taint" of the illegal search.

## RECOMMENDATION

The Court recommends that Defendant's Motions to Suppress (Dkt. #26) should be DENIED.

Upon agreement of the parties, within five (5) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 6th day of August, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE